Good morning, Your Honors. May it please the Court, my name is Joseph Becker, and I appear on behalf of Richard and Shauna Kidman and Ardy's Drive-In, which is their family-owned restaurant in Page, Arizona. I'd like to start with black-letter law, because it's our opinion that black-letter law was not properly applied, and it's a relatively simple case, other than the intense facts that you have before you. Our view of the law that should be applied is that for a binding settlement agreement to exist, this Court must find that, at the time of formation, there is agreement by all parties, on all material terms, with an intent to be bound. You know, that's an interesting statement you made, because that's the key to the case. There are four items that were not included. If those four items, or any one of them, were material, then it seems to me that there's a problem with the case. So what about the four that were not agreed to? Are any one of them material? We believe that all four of them are, but I was going to talk, because of limited time today, specifically about three, which we believe are quite clearly material and not agreed to. Okay. In fact, we think this Court can rely exclusively on the language of the lower court's decision, and opposing parties' own pleadings and statements, to find that we win this case under the black-letter law as cited. There's some things in the record that I think really help the Court. As you said, if any one of the terms contained in that September 4th agreement were both material on September 3rd and not agreed upon on September 3rd, there's no enforceable agreement. There are at least three, and I think all four of which are material, but we can find three are not material, or I'm sorry, three are material and three are not agreed upon in the EEOC's own statements. They talk about what is material in their answer brief, and it says the parties themselves in this kind of case decide what is material. It's not a UCC sort of case or sale of goods. The parties themselves decide by their statements what is material. The first material provision that the lower court found was never agreed upon is the Navajo language classes provision. The EEOC said on September 4th that on September 3rd this provision was very important to the women. That would be the plaintiff intervenors. The low dollar amount that the women, the intervenors, were willing to settle for was due to the willingness of my clients to do these Navajo language classes. Of course, we always contended that was never agreed upon, but it's clear from the record that given that the EEOC said the deal could break down on this, and this is their own email from the EEOC to my client's former attorney, that it was very important to the women and that the deal could break down. Let me ask you a question. If I understand correctly, the district judge never made findings as to whether or not any one of these four items that he found were not agreed to, that they were material. Is that correct? It's specifically true that he didn't do that with respect to the Navajo language classes. It could almost be inferred from what he said in his decision that the other two that I'm going to discuss today were immaterial, but we think that's a clear error because of the statements. I'm asking whether he made a specific finding as to materiality of the four that were not agreed to. He did not do that with the Navajo language classes, which I just discussed. It's not real clear that he did, but it could be read that he did on the other provisions. Specific findings, we call them specific findings because they are specific. I find X, I find Y. Well, then I would agree that specifically, no, there's no finding that these were material. Could you explain why the Navajo language provision is material? Why it is? Yeah. I would say it is because of what the parties, my client said, I will not do it. It was X'd out during the settlement negotiation day from the agreement. The EEOC put that back into the agreement, as the record indicates, when they sent their representation of what they thought they had agreed to on September 4th. But the reason it's material is because they said it was material because they said it's very important to the women. The money that the women on the other side agreed to take is only, we only agreed to take that little bit of money because the clients agreed, or because the women agreed, or because my clients agreed to take the Navajo language classes. That's what makes that material. Your contention is that the party's subjective belief always determines materiality? Because I can certainly think of situations where some provision in a contract may be trivial, and the characterization of that provision as material would, in some sense, be, you know, absurd. I can understand it with the Navajo language class as that being significant, but certainly the party's subjective intent has to have some limits, doesn't it? I probably personally would tend to say no. As an economist, we believe in subjective value theory and that the value that someone attaches to any particular term is subjective to that person. I may value something very highly that someone else doesn't value at all, but that would, yes, that would be a material term to me. It may not be a material term to someone else. In fact, I've gone to the EEOC's own argument in this case there, what they call, I believe, their answer brief, and it says the parties themselves determine on a case-by-case basis through mutual assent what constitutes the material terms of any particular settlement agreement. I mean, I think they agree with us on that. The second material term that the judge found no agreement is the characterization of the payment. The EEOC indicated on their own declaration that this was material on September 3rd when that language was specifically rejected. That's at page 507, 508 in the record. What form was the characterization going to take? Was this going to be as a press release, or was it going to say something in the settlement agreement? I mean, $7,400 was $7,400. Nobody was disagreeing over that. That's true. The EEOC does issue press releases, and the Kidmans, even at the time of on September 3rd, were aware of this. They certainly were free to issue their own press release, weren't they? I hope so. But they were certainly concerned. Given that, was it a material term that there was going to be a single press release? That did get discussed later because of some of the activities that the EEOC engaged in between September 3rd and September 3rd. I'm trying to figure out why the characterization becomes in. Where's the forum for characterizing the payment? Well, the forum was going to be in the settlement agreement itself. Is it clear that the settlement agreement would even have to characterize it? The EEOC ---- You didn't disagree as to who was going to get the money, did you? We did not. Okay. So this could have been stated in very neutral terms, that A, B, and C shall receive $7,400 to be paid as follows. It certainly could have, but they specifically ---- the EEOC rather specifically rejected that, as indicated in their own declaration in the pleadings in this case. We wanted a gesture of goodwill because we didn't want this to be turned into, see, they're guilty, they're paying this money, it's done its compensatory damages. And in that language, the goodwill language was specifically demanded by our side. It was specifically rejected by the other side. And if you look at these ---- if you look at the draft agreements that were shuttled around that day, you can see where our side had X'd that off, and then they, without any consent from our side, reinserted that back in. Why did the parties announce they had reached a settlement agreement? I mean, what typically happens in my experience is they say, well, we're almost there, we're pretty close, we think we can nail down a few terms, but that's not what happened in this case. Well, our side isn't convinced that that happened, although I think the lower court, you know, there's some indications both in the record that that did occur, there's some indications in the district court record that there was no settlement. I think ---- I do think that by the end of September 3rd, assuming the language had been something close to what was openly discussed on the 3rd, you know, that could have resulted in a settlement agreement. It didn't, but, I mean, it could have. I think the thing that bothers me about this materiality issue and its subjectivity is that you have a situation where, let's say the parties agree on, you know, 9 or 12 terms that are clearly material, they start exchanging documents, and there's a clause in there that there's a forum selection clause, or there's something of that nature, and the party says, gee, I now subjectively have determined that I don't want that in there, and we never specifically discussed it, so we don't have a deal, and it's material to me. That's the problem that I'm having in terms of this whole materiality analysis because it allows parties to avoid any agreement once they get, you know, the hard copy. Well, I, of course, think that, you know, there shouldn't be an agreement unless it's truly voluntary, and if they break down because they can't reach language that, you know, that represents the party's subjective valuations here, then there shouldn't be an agreement. The third material term to which the court said the parties never agreed upon, but the EEOC itself said was material, was that this case would be resolved with a consent decree. The EEOC says it was material on September 3rd, even in their motion to compel enforcement of the agreement. It lists in that motion to compel 11 terms that it claims were material. The court found no agreement on the requirement that it be resolved by a consent decree, yet the EEOC itself admitted that it was. Even in the working draft they claimed to have distributed at the end of the day on September 3rd, they changed the word settlement agreement to consent decree. We think on those three points alone there's no settlement agreement and we necessarily win. The lower court, however, in a novel move and in an effort to settle the case, apparently per the EEOC's suggestion, extracted common terms from unaccepted offers and used those to form an agreement that it's trying to enforce. Counsel, is there anything in your argument so far that turns on whether we make a choice between applying federal common law or Arizona law? No. I mean, we do like state common law. We take issue with the federal common law. We think it's much easier to prevail under the state law. We think that law is much better developed and should be the law per what some of the more recent court cases have said, but we do believe we prevail under either federal common law or under the Arizona statutes. If we go with the notion that somehow common terms from rejected offers can somehow form what's material and what's not material, there are several problems, we think. The first is that some of the inserted terms were still material on September 3rd, even if never agreed upon, so there's still no agreement on all material terms. The second problem we have with what the court did is under Sharmella there's still no intent to be bound. I mean, what the court did is it grabbed these terms from rejected offers and counteroffers and decided to make that agreement, but there's still no intent to be bound here. This isn't a case where there was an express – well, there's dispute, let's just say it this way, as to whether there was an express reservation absent assigned writing, but there are other things that Sharmella suggests we should look at to decide if intent to be bound was formed at the court's provision. To be clear, I should say that under Sharmella there's four things that the court should look at to determine intent. One is whether there's express reservation not to be bound. One is whether there's partial performance. One is whether all terms have been fully agreed upon, and that's not just the material terms. Even minor terms to be worked out can be evidence that there's no intent to be bound absent assigned writing. And then whether the agreement is the type usually committed to writing is the fourth Sharmella element that you would look at to decide if there is indeed an intent to be bound. Sharmella says we can look at the language of the draft agreement and decide if a writing is contemplated. In this case, the language of the agreement itself says that an action should be resolved by entry of this decree. This decree resolves all claims. There's also in this case great significance on the execution date. What's going to happen next is conditioned upon when that writing is submitted to the court and signed and admitted by the court. There's been great insistence in the record upon signatures under the threat of sanctions even. So signatures are needed, quote, to get the deal done, according to the other side. The EEOC also issued no press release because the EEOC said they wait until the judge signs the decree before they consider that the thing is done. So there's plenty of evidence in the record to suggest that it was always contemplated by the parties that this would resolve with some signed writing submitted to the court. There's been no partial performance whatsoever. The day after the settlement negotiations were held, the Kidmans, my clients, said, there's things in here that we never agreed to. So there was no performance ever done. Let me ask you, counsel, before your time runs out. Sure. The district judge is, as you indicate, should have made findings on the materiality or lack thereof of the four elements. After the opinion came out or before the opinion came out, was there any motion or request to the judge to make those findings? No. How would you argue then that you haven't waived the issue by failing to ask for findings either before or after the opinion came out? It's not something I thought about. I mean, it seemed clear from the judge's final order that these were the terms that he was going to ‑‑ I mean, he laid out the standard, and he said these are the terms that you are going to have to accept. We felt like it was ripe for appeal at that point. Now, one other question on what common law applies. You indicate you'd prefer to have Arizona law, but Stroman seems very clear to me that that's a questionable position. How would you distinguish Stroman? I'm not familiar with that case. Well, that's the case that says that you don't ‑‑ that there's federal common law on the issue. I thought you perhaps would be willing to discuss that one with us. Stroman v. West Coast Grocery Company, 884 Fed 2nd 458. And you're not familiar with that case. I'm willing to discuss it, but I'm not prepared to do that right now. Okay. Thank you. Before I run completely out of time, I'll just go over a couple of other things.  One, Arizona law actually requires that, one of the reasons we prefer Arizona state law. In fact, most states require it. According to Hacken v. Rupp, it prevails almost everywhere. That case is cited. The other thing is, is that the statute of frauds, we believe, applies to this. The district court completely ignored our claim that the statute of frauds prevents any kind of enforcement or even bringing the motion to compel, given the fact that the agreement was never in signed writing nor ever read into the court. I'm going to save the 75 seconds I have left for rebuttal. Ms. Oxford. May it please the Court, my name is Susan Oxford. I represent the Equal Employment Opportunity Commission as aptly cross-appellant in this matter. This is not a case where a district judge cobbled together a settlement agreement by looking at an exchange of documents, correspondence over a period of time, by parties who negotiated outside the court's presence. This is a settlement negotiation that was reached during the course of a single day with the assistance of a magistrate, in the magistrate's chambers, and, at the end of the day, announced by all parties jointly, including the defendants who were in the courtroom and heard their attorneys stand and say, Judge, we have a settlement. There can still be a lack of mutuality, a lack of meeting of the minds, even under that scenario, though, correct? There could, and that's why it's completely proper that the district judge, although, and I could continue on with the evidence that just demonstrates the parties continued to assert that they had reached a settlement, not that they were moving towards a settlement or were close or had reached concepts that could form a settlement, but over the course of the next few weeks, the parties continued to represent to each other and to the court that they had reached a settlement and did not dispute the magistrate's entry of a minute order on the docket on September 5th, saying the parties have settled. Notwithstanding all that, there was still the question about what material elements were assented on that day, and for that, the district court, properly and consistent with all of this court's precedent, conducted an evidentiary hearing. At that hearing, the judge considered more than 50 documents and heard the testimony of seven witnesses. It's not what material issues were agreed upon. It's whether all material issues were agreed upon, correct? Correct. I'm sorry. Yes. And the judge, considering all of that evidence over the course of two days, determined that the parties had reached agreement on all of the material elements of the settlement. And it's true. There were elements that were not agreed to that day, even an element that EEOC's attorney on September 4th characterized as important to the parties. Where in his order does he say that the four items that were not agreed to were immaterial? He doesn't say that expressly. It's implicit in his finding. Did you ask for a finding on that? We did not. Well, we moved for enforcement of a settlement which we said represented the parties' agreement on material terms. Let me ask the question again. Did you ask for the district judge to make a finding as to the lack of materiality of the four items that were not agreed to? After he issued that decision, we did not go back and ask him. But before?  Implicit in your motion? We did not ask the court in our motion, Judge, make a finding that these four elements were not agreed to. Isn't the answer just no? Yes, Your Honor. Okay. So the issue was never brought to the attention specifically to the district judge? I would take issue with that, Your Honor, because I think that was the crux of the issue which the district court clearly understood. And I would maintain and submit to this court that the judge knew that his job, and he states in his opinion, that the legal standard is that he has to find whether the parties agreed to the material elements of a settlement. And in his order, he says the parties did. What strikes me as the problem we're running into is that counsel makes a pretty good argument that there is at least an argument as to whether one or more of these non-agreed-to findings were material. And here we're at the court of appeals trying to decide what usually a district court decides. And why wouldn't we just send the case back down to the district judge and say, please tell us whether you believe these findings are correct? We can even tell him what law to apply, that Stroman federal common law applies. Why would we decide that up here on appeal when it should have been or could have been discussed below? I believe we cite case law in our brief, although I can't tell you on which page, in which we talk about the court of appeals relying on implicit findings of a district court in a situation like this. So I do believe that you could find that there was the district court implicitly found these to be non-material. But certainly that's another course of action. Turn with me to his order and show me the language which implicitly finds that the four non-agreed-to items were immaterial. It's not a statement in his order. That's why it's implicit. We're going to find something in his order if we're going to find, if we're going to conclude that he actually made an implicit finding. It must come, it seems to me, from his order or something he said or something. What the judge said is, if we can get to the right page. It's at 5.56 and continuing with the discussion begins at 5.56 of the excerpt. Right. Based on the foregoing on page 560 of the appendix, 11 of the district court's opinion, based on the foregoing. Which page are you reading from? 560 of the appendix.  5.56, line 11? Yes. Okay. Based on the foregoing and having presided over an evidentiary hearing and judging the credibility of the witnesses. Whoops. I don't have that on 5.56. 560. I'm sorry. Did I say? It's 560. Did I misspeak? 5.66. 5.60 of the appendix. Well, the order only goes up to 5.64. 5.60. 5.60. 5.60, page 11 of his order. Okay. Line 11. Well, it's page 11 of the district court's opinion. Got it. No, it's starting at line 22. I would submit that that language, where the court says that it finds the following material terms were agreed upon by the parties and are therefore enforceable, and continues on the next page after listing the nine items, the court finds there was specifically no agreement as to the following terms, that that is by implication a finding by the district court that the four terms to which there was no agreement are not material, or else the judge could not have enforced a settlement agreement, because you can only enforce a settlement agreement when the parties have agreed to all the material terms. And we would further submit that if you look at those four terms, each one of them would only, if they had been enforced, would have been enforced in the EEOC's favor. They're items that the EEOC would have wanted. And for the defendant to argue that there is no settlement, after defendant's counsel stood before the court and said there was, on the basis of EEOC not getting four things that we at one point sought to get, would really turn the whole black letter law of settlement enforcement on its head. It would allow defendants to be able to get an out any time a plaintiff is willing to concede something to which the plaintiff mistakenly thought there was agreement and later finds out there was not. I think you can further look to the fact that the district judge properly found that these four items are not material by the fact that we, in the testimony that the judge listened to later on in the evidentiary hearing, we did not argue that these were deal breakers, that we could not have an agreement without these terms, unlike other terms that you see. Counsel, if I look at pages 11 and 12, the court on page 11 on line 12 says that the court must enforce the terms of a settlement agreement where there is an agreement on the material terms. Now, what it doesn't say is and cannot enforce the settlement agreement if there was a failure to agree on other material terms. So it would have been useful if we had heard that, but we didn't get it. Then down at the lines 23 and 24, as you previously pointed out to us, the following material terms were agreed to. Again, sort of leaves unstated were there other things that were not agreed to. Now, with respect to the four things, then, that are numbered on page 12, as to which this court specifically found that there was no agreement, now, what happens if we are to deem? Is it the EEOC's position, is it the commission's position that these are not material terms? Absolutely. These are not material terms. And these are, per this order, then, out of the settlement entirely. So these have all been apparently resolved in favor of the Kidmans. This is correct. And we have not cross-appealed on any of them. And we do not maintain that they are material in any way. And if we thought that those were material terms, either because the district court failed to find that they were not material or because we think that the district court's findings are clearly erroneous, then what would happen? If there was evidence to show that they were. By giving you that premise. If we concluded that these were material terms, either because the district court failed to enter that finding or because we thought the district court's finding was clearly erroneous, then what? I believe as a matter of black letter contract law, there is an argument that the settlement would be invalid, but I would submit that as a matter of. So the whole settlement would be out and you'd be back to negotiating at step one. I submit as a matter of equity and the court's fair administration of the proceedings before it and respect to the district court's discretion to manage the case before it, that that would undermine the justice of the situation because, in fact, you would be taking something to which the parties have agreed, as you can see by the nine terms, to the important elements of the dispute between the parties and taking four items to which the EEOC originally sought and now no longer seeks and saying that could sabotage a settlement that otherwise existed. Now, let's start with the Navajo language provision because Counsel for the Kidmans has maintained that one of your attorneys, post-settlement announcement, said that this was a material term of the settlement agreement and it's clear that we do not have agreement on it. The day after the September 3rd negotiations, first of all, let me just say that one reason, one piece of evidence why this is not material is it wasn't pinned down on September 3rd. The material elements of the settlement agreement were all nailed down and agreed to by the parties. By the end of the day, this was left hanging. It was something that Mr. Selden, the Kidmans attorney, agrees they discussed, and they discussed it in a couple of different terms, and it's reflected in the handwritten draft from the September 3rd day. Is this one of the provisions that was handwritten back in by an EEOC attorney? No, this is not. This is something there was a paragraph that talked about the Kidmans hiring a trainer or a consultant to come in and provide training to its management on Navajo culture, language, and traditions, and in the testimony before the district court, Mr. Kidman actually talks about how he had a particular consultant in mind that he would like to hire to bring in. He clearly admits that they talked about that on Friday, and there was a second element that talked about the Kidmans attending a Navajo class at the community college, and Mary Jo O'Neill, the EEOC attorney, left at the end of Friday believing that they had agreed to one or both of those or some combination of it, and she was, in fact, wrong. And the next day, surprised by the mistaken disconnect between the two parties' understanding, she used language that I would hate to have the deal break down over this. She said it was a deal breaker. She said I would hate to have the deal break down over this. That's in her email. Did she refer to it as a deal breaker? No, she did not. That Mr. Seldin loosely characterized her. They had a conversation on the phone for which there's no transcript, and then there's Mary Jo O'Neill's email to David Seldin in which she says, I thought we agreed on this. This was important to the women. I'd hate to see the deal break down over this. And I would submit that. The deal break down? I'm sorry. That sort of sounds like a deal breaker to me. It's very close. That's why I say Mr. Seldin was providing a. . . But the question of materiality goes to not what did Mary Jo say the next day when she was surprised to learn that the Kidmans did not agree to this, but what would she have done the day before if she learned that there was no agreement. Would she have walked out of that room and said, fine, all of the other things we agreed to we're going to just walk away from because we can't get that one element. How can we possibly know since the following day, she says, she expressed a surprise that it wasn't in the agreement. And I would. . . The announcement was a little premature, wasn't it? That's why this court defers to the findings of fact from a district judge that, as he properly did in this case, holds an evidentiary hearing and puts everybody on the witness stand. The judge listened to Ms. O'Neill's testimony. She listened to Mr. Seldin. He listened to Mr. Seldin's testimony. He made credibility determinations. And then at the end of all of that, two days of witness testimony and the 50-plus documents that he reviewed, he made findings and determined there was no agreement on that issue, and we would say by implication that it wasn't material as well. Yeah, we have to assume that. But during this period of time going back and forth, Judge McNamee is a fairly calm fellow, but he takes issue with the EEOC on more than one case attempted to put terms into the agreement that clearly were not agreed to. The EEOC delayed sending documents to a strategic. . . As a strategic move to the disadvantage of Mr. Seldin, it would seem that there was a lot going on that was very adversarial as they were trying to put the deal together. It doesn't seem very calm. In fact, it was not adversarial on September 4th, and in fact the judge speculates that there was some strategic decision to delay sending the documents to Mr. Seldin, but there's absolutely no evidence in the record of that. Our attorneys worked as quickly as they could. They were in e-mail contact. . . Well, I'm sure you're going to defend your attorney's conduct, but the point I'm trying to make is they're trying to put together what the deal actually was they agreed to, and there's insertions that weren't agreed to put in by EEOC, according to the judge. That's all I know. Then later on he says that they were treating the opposite attorney to his disadvantage. If you're trying to determine what is part of the agreement, it seems to me there was a lot going on here which indicates perhaps the agreement wasn't as firm as the lawyers thought it was. Well, in some respects the district court is simply mistaken. For instance, he talks about insertion of the term back pay several times, and in fact EEOC in the first type draft that we sent to Mr. Seldin, we characterized the payment as compensatory damages. We didn't include back pay. And when we learned that that was a problem in the next draft we circulated, we took that out and changed it to a gesture of goodwill. The judge mistakenly says that we continuously reinserted the term back pay, which we did not do. Well, all we know is what the district judge said, and he's characterizing this as very contentious. At the time they're trying to put something together, and it strikes me whether that's right or wrong, that was the view he had. It seems it's just the opposite of a deal being done. After you say the deal was done, there's this continuous give and take. With all due respect, Judge Wallace, you do know more than what the district judge says because you have every draft in the record, and although it's tedious, and they're each one labeled, you can look at the handwritten draft from the end of the day of September 3rd that Mary Jo O'Neill took home with her, and you can look at the draft that she emailed to Mr. Seldin the next day around 2.30 p.m., and you can see the language that is or is not in there, and you can see that the compensatory damages language comes out by October 23rd. That draft is in there as well. And we have Ms. O'Neill's testimony, and Mr. Seldin does not contradict this, that they had cordial discussions on September 4th. It was not contentious. Mr. Seldin read through the agreement and spotted the Navajo language provision and called that to Ms. O'Neill's attention and nothing else. There was no concerns that Ms. O'Neill's draft was widely divergent from what the parties had discussed. Granted, it contains some standard language, boilerplate language, that we put in our consent decrees on a regular basis that we regularly take out if a party objects to it and we otherwise have a settlement agreement. And that's eventually exactly what happened here by October 23rd. And for the defendants, Mr. Becker to say in his brief – I'd just ask you a question. Sure. During the time that the judge had the evidentiary hearing on whether there was a settlement, did the EEOC concede that those four terms were not important, were not material to the EEOC's position, or is that a position that you're taking now? In our brief, in a footnote in our brief, we've pointed out that we conceded the – During the hearing. During the hearing. That's my question. In closing arguments. Were those terms conceded by the EEOC, since you argue they were in your favor, as not being part of the agreement or withdrawn? Well, we had already withdrawn the characterization of the settlement agreement. So that, before we sought enforcement, we had already altered that. With respect to judgment in favor of and the consent decree, we expressly conceded that in our closing statement at the end of the evidentiary hearing. As far as I know, we did not expressly address the Navajo language. It's only now you're saying that you don't care about that term. You're willing to concede that term. No, I think that – It wasn't part of the record when the judge was trying to determine what the deal was, correct? All I'm saying is in our closing arguments, I did not find an express concession on the Navajo language class, but I think if you look at Mary Jo O'Neill's testimony, it's clear from the entire testimony that although she – that it was important, but not a deal breaker. Raised for the first time in closing argument. In effect, what happens is you have a hearing. Your lawyer decides maybe I can't win on this issue. It's not a concession. And in closing argument, they concede that perhaps the evidence doesn't support the inclusion of that provision. That's very different from the issue of whether that provision was sought by the EEOC or the EEOC believed it was material, right? You made an argument that I thought was persuasive. You said, oh, gosh, you know, we don't care about those terms. So I'm trying to understand when that came about. And I'm sorry that I can't tell you – point to a specific point in the record with respect to the Navajo language class other than the testimony of Mary Jo O'Neill generally. But you wanted it at the time that you had the evidentiary hearing. We did move to include that. Okay. Yes. I see that my time is up. I have not addressed our cross-appeal, but we would rely on our briefs for that unless the Court has any questions. Thank you very much, counsel. Mr. Becker, I see you're now down to 71 seconds. But as you come up, Mr. Becker, perhaps you could answer a question for me, And that is, why at this point when will you – are the Kidmans interested in contesting the materiality of four points on which you have won? You have prevailed on these points. The judge said these are not in the agreement. So why now argue that they're material? The only answer can be, I think, I'm putting words in your mouth, because we don't want this settlement anymore. Well, the Kidmans never felt like there was a settlement completed until they got a chance to review the writing. Even though their counsel came in and agreed in front of the magistrate that there was a settlement. Not on the terms as the EEOC understood them as represented in their September 4th facts. Other terms that are in the agreement that the Kidmans think that they didn't agree to. One of which is the subject of the cross-appeal. They do not want to discontinue their language policy because it's saved their business. In my 11 seconds, a couple of things. To answer a question you asked her, the reason you might decide that this doesn't need to go back to the district court is because you can look at the record, you can see what's material, and you can decide there was clear error. What was in the EEOC's favor as far as, you know, by the time we got to the end of the motion to compel hearing isn't relevant. What's relevant is what was material on September 3rd. The Navajo language classes were reinserted after the fact. They were X'd out in the working document. They were reinserted on September 4th. And I'm out of time, so I'll entertain you. One last question. Okay. You've told me that the Kidmans do not believe that they agreed to Provision 4 of the findings of the district court. That is, the defendants agreed to rescind their current English language policy? That's correct. In fact, that's pretty fundamental to the case, isn't it? Yes. I mean, that seems to be the whole ballgame here. You're telling us now that the Kidmans never agreed to this? That's correct. In fact, the reason the court might think that was the case is because Mr. Selden did send language that he thought better represented the discussions of September 4th. He sent those to EEOC on September 24th. That language was specifically revoked as soon as the Kidmans saw it because they didn't like that specific provision. So, no, they take it. So you're arguing, then, that the district court's finding that this provision was material and was agreed to is clearly erroneous? I don't know that I can say it's clearly erroneous. What I'm saying is that you can't. If you can't, then you're out of court, aren't you? We're bound by the district court's findings unless the district court's findings are clearly erroneous, aren't they? They're clearly erroneous on the three and four that we mentioned before. Okay. What I'm saying is there's a factual dispute. Did you argue in your brief that finding number four, rescinding the current English language policy, was a clearly erroneous finding by the district court? We did not argue that. Then how can you take the position now? I mean, you asked the question as to whether we took issue with the other things. For purposes of appeal, you've conceded that point, haven't you? Perhaps. Okay. Thank you, counsel. All right. We thank both counsel for the argument, and the EEOC versus Kidman will be submitted.
judges: Wallace, Bybee, Pregerson